IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

NICOLASA MONTOYA,              §
                               §
            *Plaintiff,*        §
                               §          SA-24-CV-00422-FB
vs.                            §
                               §
H-E-B, LP,                     §
                               §
            *Defendant.*        §

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion for Summary Judgment [#43] and Plaintiff's Motion for Partial Summary Judgment [#52]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In evaluating the merits of the parties' motions, the undersigned has also considered their various responses and replies [#46, #49, #54]. For the reasons set forth below, it is recommended that Defendant's motion be granted and Plaintiff's motion be denied.[1]

---

[1] Plaintiff filed her motion for summary judgment on December 19, 2025, more than six weeks after the deadline for the filing of dispositive motions had expired according to the governing Scheduling Order. The District Court could strike the motion as untimely. Regardless, the motion should be denied for the reasons explained in this recommendation.

1

### I.  Background

This case arises out of a slip-and-fall incident at a HEB grocery store located at 1230 Culebra Road in San Antonio, Texas.  According to the live pleading, Plaintiff Nicholasa Montoya was grocery shopping on July 9, 2023, when she slipped and fell on a wet slippery substance on the floor and suffered serious injury.  Montoya asserts a single cause of action of premises liability against Defendant HEB, alleging that she was an invitee at the time of the accident and that HEB breached its duty to inspect its premises for a dangerous condition, maintain its premises in a reasonably safe manner, and warn its invitees of dangerous conditions on the premises.  The Court has diversity jurisdiction over Montoya's state-law cause of action because Montoya is a citizen of a foreign state, Mexico, and HEB is a citizen of Texas, and the amount in controversy exceeds the jurisdictional threshold.  *See* 28 U.S.C. § 1332(a)(2).

HEB has moved for summary judgment, arguing that there is no evidence that it knew or should have known of a dangerous condition on its premises or that HEB breached any legal duty owed to Montoya.  Montoya has filed a cross motion for partial summary judgment on the basis that HEB's notice of an unreasonable risk of harm is undisputed.  The motions are ripe for the Court's review.

### II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Westphal*, 230 F.3d at 174.

### III.  Summary Judgment Record

The summary judgment record contains the following undisputed facts.  Montoya was grocery shopping at the Culebra HEB on July 9, 2023, when she slipped.  (Compl. [#1], at ¶ 3.5; Answer [#6], at ¶¶ 10, 12; Montoya Dep. [#43-1], 33:13–34:1.)  The summary judgment record includes a video of the area of the store where Montoya slipped and captured the incident and the few minutes prior while Montoya, her husband, and other customers were shopping.  (Video [#43-3].)  The incident itself involved Montoya losing her footing on her left foot and sliding

down onto one knee while remaining standing on her right leg. (*Id.*) Montoya did not fall to the ground. (*Id.*) Montoya was wearing flip flop sandals when she slipped, and it is unclear from the video whether her knee merely gave out, whether she slipped on something on the floor, or whether she tripped on her own shoe. (Video [#43-3]; Galvan Dep. [#46-5], at 19:10–13; 39:21–40:7.)

It is undisputed that Montoya walked over the same area where she slipped four times before the incident (including once about 20 seconds prior to the incident) and did not see any liquid on the floor at that time. (Montoya Dep. [#43-1], at 34:7–35:25; Video [#43-3].) Additionally, several other customers and Montoya's husband walked over the area in which she slipped without incident during the four minutes before the slip and fall. (Montoya Dep. [#43-]1, at 43:24–44:2; Video [#43-3].) Montoya testified that she believes that a clear liquid somehow came to be on the floor at some point in the 20 seconds between the fourth time she walked across the area and the incident. (Montoya Dep. [#43-]1, at 35:20–25.) Montoya described the liquid as a puddle of water a little bit larger than the size of her hand. (*Id.* at 40:23–25.) A male customer walked through that same area carrying a shopping basket during those same 20 seconds, making him a possible cause of any water or other liquid on the floor. (Video [#43-3].) It is undisputed that there were no warning signs placed in the area where Montoya slipped, and the HEB employee who was working just a few feet from the incident, Rose Rodriguez, did not see any water or other liquid on the floor in the area. (Compl. [#1], at ¶¶ 3.8–3.9; Answer [#6], at ¶ 11–12; Rodriguez Dep. [#43-2], at 27:24–28:3.)

After the incident, Montoya helped herself up on her own by balancing one arm on an adjacent shelf; she then walked away immediately and subsequently left the store. (Montoya Dep. [#43-1], at 37:8–38:5–15; Video [#43-3].) It is undisputed that another HEB employee,

Adrian Landeros, wiped the floor after Montoya fell with a paper towel after another customer pointed out that the area might be of concern.  (Compl. [#1], at ¶ 3.10; Answer [#6], at ¶ 13; Montoya Dep. [#43-1], at 38:13–15; Landeros Dep. [#46-4], at 25:8–27:6, 33:24–34:9.)  Yet the manager of the Culebra HEB, Cindy Galvan, testified that HEB employees are trained to wipe any area of concern, and the fact that an employee wiped the area does not indicate that there was in fact liquid on the floor.  (Galvan Dep. [#46-5], at 45:10–19.)  It is also undisputed that Montoya did not report the incident to Rodriguez, Landeros, or any other HEB employee that day.  (Montoya Dep. [#43-1], at 43-1], at 38:16–21.)  HEB admits that Montoya was an invitee at the time of the incident and that it had control of the premises where the accident occurred.  (Answer [#6], at ¶ 22.)

### IV. Analysis

To prevail on her premises-liability claim, Montoya must establish four elements: (1) HEB had knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) HEB failed to take reasonable care to reduce or eliminate the risk; and (4) HEB's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.  *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 216–17 (Tex. 2015).  HEB argues it is entitled to summary judgment because Montoya has not presented any evidence that HEB had knowledge or should have known of any dangerous conditions or that it breached any duty of care that led to Montoya sustaining injury.

Either actual or constructive knowledge of an alleged danger is sufficient to support a premises-liability claim.  *Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 317–18 (Tex. 2024).  A slip-and-fall plaintiff can satisfy the notice element by establishing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the

floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). When determining if a premises owner has actual knowledge of a condition that presents an unreasonable risk of harm, courts generally consider whether the owner had received reports of prior injuries or reports of the potential danger presented by the condition. *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). There is no evidence that HEB placed the substance on the floor or that HEB received a report or was notified of a dangerous condition in the aisle in question before Montoya's fall. Therefore, as a matter of law, the defendant did not have actual knowledge of a dangerous condition on its premises. To prevail, Montoya must therefore prove that a liquid had been on the floor for a sufficient period of time that HEB had a reasonable opportunity to discover it.

"The rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice is firmly rooted in [Texas] jurisprudence." *Reece*, 81 S.W.3d at 815. The Texas Supreme Court has explained that the rule emerged from its "reluctance to impose liability on a storekeeper for the carelessness of another over whom it had no control or for 'the fortuitous act of a single customer' that could instantly create a dangerous condition." *Id.* at 816 (quoting *Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539, 541 (Tex. 1976)). According to the Texas Supreme Court,

> The so-called "time-notice rule" is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition. . . . An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it. . . . Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition. What constitutes a reasonable time for a premises owner to discover a dangerous

6

condition will, of course, vary depending upon the facts and circumstances presented.

*Id.* (emphasis in original).  A more conspicuous hazard, for example, might shorten the time in which a jury could find that a premises owner reasonably should have discovered it.  *Id.* Likewise, evidence that "an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time" could suggest that "the premises owner should have become aware of the dangerous condition." *Id.*  "But in either case, there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Id.*  "Otherwise, owners would face strict liability for any dangerous condition on their premises, an approach [the Texas Supreme Court] ha[s] clearly rejected." *Id.*

The video evidence establishes that Montoya walked over the area where the incident occurred four times before she slipped onto one knee, and she conceded in her deposition that there was nothing on the floor until the fifth and last time she walked through the area. (Montoya Dep. [#43-1], at 34:7–35:25.)  Furthermore, Montoya acknowledged in her deposition that there was only a 20-second period between the time she walked through the area a fourth time without incident and the fifth time in which she slipped and fell.  (Montoya Dep. [#43-]1, at 35:20–25.)  The video evidence establishes that there is only one possible source of the alleged liquid—a customer who walked through the area carrying a shopping basket during those intervening 20 seconds.

The undersigned agrees with HEB that a 20 seconds is simply too brief of a time period for an HEB employee working in the area to be imputed with constructive knowledge of a clear liquid.  Other federal courts applying Texas law and the time-notice rule in a premises-liability action have held similarly.  In *Sturdivant v. Target Corporation*, the court granted summary

judgment for Target, as premises holder, where the plaintiff produced evidence that the water had only been on the floor for five minutes before her fall.  464 F. Supp. 2d 596, 603 (N.D. Tex. 2006).  The court found this was not long enough to give Target a reasonable opportunity to discover the water: "Given the low visibility of the water and the evidence that the water was on the floor for five minutes, the Court concluded as a matter of law that Target did not have a reasonable opportunity to discovery the water."  *Id.*  The same result is compelled here where there was even less time for a nearby employee to notice a small amount of clear liquid on the floor.

Montoya argues in response to HEB's motion that there was a reasonable opportunity for HEB to discover the water on the floor because (1) employee Rose Rodriguez was working in close proximity to the area at the time; (2) store manager Cindy Galvan (who was not present in the area of the incident that day) testified in her deposition that "had there been water on the floor," "we would see there is water" and that Rodriguez "should" have seen it; and (3) there is evidence that employee Adrian Landeros spent a full minute wiping the floor after the incident. None of these arguments addresses the time-notice rule or supports a finding of constructive notice here.

First, there is nothing in the record to suggest that any clear liquid on the floor, water or otherwise, was conspicuous given the totality of the circumstances.  Evidence that Landeros was directed to the site of the incident to wipe the area after Montoya slipped does not speak to whether Rodriguez or any other employee working in the area would have had a reasonable opportunity to notice it within a 20-second period if they too had not been directed toward the area.  Secondly, Galvan's testimony regarding whether Rodriguez or another hypothetical employee would have or should have noticed a clear substance like water must be considered in

context. This testimony was only general testimony that one can see water on a floor. (Galvan Dep. [#46-5], at 42:5–17 ("Q: So it is difficult to scan and see clear—a clear substance on the floor? A: No. I mean, if there is water, we would see there is water. Q: You can see it? A: Yes.").) Although manager Galvan noted employees can see water on the floor, throughout her deposition, Galvan questioned whether there was in fact water on the floor of the Culebra HEB on the date and time of the incident in question, repeatedly testifying that she believed Rodriguez did not see any liquid in the area because Rodriguez testified to that effect and "[Rodriguez] was very anal about the floors." (Galvan Dep. [#46-5], at 43:18–21.) General testimony by an employee who was not present in the store during the incident that water as a substance *can* be seen on a store floor is not evidence bearing on whether the small amount of water, which Montoya characterized as approximately the size of her hand, should have been seen by an employee during a 20-second period. Moreover, Galvan's statement at the end of her deposition that Rodriguez "should" have seen water if there had been water on the floor was tethered to a time stamp on the video when Rodriguez walked past the area, which was over a minute prior to Montoya's fall and which preceded the shopper with the red basket (who could have been the cause of the liquid) walking in the area. (*Id.* at 46:13–47:7.)

Montoya's evidence amounts to nothing more than evidence that an HEB employee, Rodriguez, was in close proximity to possible liquid on the floor of the store immediately before Montoya fell. The Texas Supreme Court has held such evidence, without more, is legally insufficient to charge the premises owner with constructive notice. *Reece*, 81 S.W.3d at 815–16. Because Montoya has failed to produce any evidence that HEB had a reasonable opportunity to discover water on the floor during the relevant 20-second period, she cannot prevail on her

9

premises-liability cause of action, and HEB is entitled to summary judgment.  For the same reasons, Montoya's cross motion for summary judgment should be denied.

### V.  Conclusion and Recommendation

Having considered the parties' motions, responses and replies, the governing law, and summary-judgment record, the undersigned **recommends** that Defendant's Motion for Summary Judgment [#43] be **granted** and Plaintiff's Motion for Partial Summary Judgment [#52] be **denied**.

### VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain

10

error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 17th day of February, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

11